[Crim. No. 4201.   Third Dist.   June 21, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. MICHAEL HUTSON, Defendant and Appellant.

Hiram S. Dillin, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Edward A. Hinz, Jr., and Nelson Kempsky, Deputy Attorneys General, for Plaintiff and Respondent.

PIERCE, P. J.—Defendant Michael Hutson, 21 years of age, was convicted January 21, 1966, by a jury of the crime of assault with a deadly weapon. (Pen. Code, § 245.)

Defendant raises three contentions on appeal: that his confession was involuntary and therefore erroneously admitted into evidence; that the court committed error by failing to instruct the jury with regard to defendant's right to counsel and his right to remain silent; and that defendant was not advised of his right to appointed counsel at the interrogation.

On October 21, 1965, the car of Mrs. Donna Jaynes was fired upon by some unknown person while she was driving away from Nevada City. Mrs. Jaynes immediately returned to Nevada City where the car was photographed and certain bullet fragmants removed.

Subsequently, a Nevada City police officer found 32 or 34 empty cartridges near the scene of the shooting and two empty cartridges a slight distance away, near a pipeline which had earlier been punctured by many bullets. At a time shortly after the puncturing of the pipe defendant had been seen near the pipe carrying a .22 rifle. On October 29, 1965, the .22 rifle belinging to defendant was obtained from him upon request of local officers who possessed a search warrant. The rifle was sent to the Criminal Investigation and Identification (C. I. & I.) laboratory in Sacramento, along with the empty cartridge cases found near the pipe and at the scene of the shooting.

The sheriff received a report from C. I. & I. identifying defendant's as the gun which had fired the cartridge cases found. The sheriff called in defendant for interrogation.

At the trial the sheriff and an undersheriff were produced by the prosecution to testify regarding the statement then given them by defendant. A *voir dire* examination out of the presence of the jury was had by the court. Both the sheriff and undersheriff testified that before any statement was taken defendant was advised of his right to remain silent and of his right to counsel; also that no threats or promises were made. Defendant was told of the report from the C. I. & I. laboratory. Defendant elected to talk. During the interrogation, he admitted having fired at Mrs. Jaynes' car. Defendant's grandfather was called to the police station where, according to the testimony of an officer, defendant repeated his confession in the grandfather's presence.

Defendant testified at the *voir dire* examination. He denied that any warnings were given. He said that the report was

discussed with him. We quote excerpts of defendant's testimony from the record: "Then he [the sheriff] come up with this report and I told him more or less agreed with him on that, then— Q. You told us a minute ago, excuse me for interrupting, that you didn't believe that report? A. After he read it all over to me. Q. Then you did agree with it? A. More or less. I just went along with him." Later he testified: "Q. You said I guess it's true? A. I said it might be true." Defendant insisted promises were made him. First he testified: "He said it would never come to Court." Later he testified the officer had told him, "it will probably never come to court"; that he would go and talk to the lady (Mrs. Jaynes) "To see what he could do. . . ."

The grandfather testified during the *voir dire* examination. He denied that defendant repeated any confession in his presence. He also denied that any warning had been given defendant of his right to remain silent or to have an attorney. Defendant had testified he thought he could be forced to talk as a parolee from the Youth Authority. Defendant contended the sheriff had told him he "would be better off if he confessed." (This the sheriff denied.)

Defendant had not been immediately charged. He and his grandfather were permitted to leave after the interview. Later he was apprehended and charged.

The trial judge, after hearing the evidence outlined, permitted the confession to be introduced. The officers repeated their testimony before the jury. Defendant testified on his own behalf. He admitted he had been out with his rifle on the day in question but not in the vicinity of the pipeline, and he stated he could not have fired in the direction of Mrs. Jaynes' car or in the direction of the road over which her car was passing. His account of the conversations with, and statements to, the police officers was substantially the same as that he had given during the *voir dire* examination. This reiteration included a flat denial that the officers had given him the warnings required to be given under the *Escobedo-Dorado* rule and a denial that he had effectively waived his right to counsel.

A standard instruction on the issue of voluntariness was given by the court at defendant's request. None framed to include specifically the warning required by *People* v. *Dorado* (1965) 62 Cal.2d 338, 353 [42 Cal.Rptr. 169, 398 P.2d 361], was requested or given.

There is no merit to the contention that the confession

was improperly admitted into evidence as involuntarily made. On conflicting substantial evidence the trial court expressly found the confession to be (1) voluntary generally, also (2) a proper warning had been given under *Escobedo* v. *Illinois* (1964) 378 U.S. 478 [12 L.Ed.2d 977, 84 S.Ct. 1758], and *People* v. *Dorado, supra*, 62 Cal.2d 338. The confession, therefore, was properly admitted.

Regarding defendant's contention that the warning given did not meet the prescription of adequacy under *Miranda* v. *Arizona*, 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974], in that the officers did not inform defendant he was entitled, if indigent, to have court-assigned counsel and to have an attorney present during interrogation, the answer is that the prosecution was not obligated so to extend the warning. ■ The case was tried in January 1966, six months before *Miranda* (decided June 13, 1966). United States constitutional compulsion does not extend the *Miranda* rule to cases so tried. (*Johnson* v. *New Jersey*, 384 U.S. 719 [16 L.Ed. 2d 882, 86 S.Ct. 1772].) And our California Supreme Court has elected to reject such retroactive application. (*People* v. *Rollins*, 65 Cal.2d 681 [56 Cal.Rptr. 293, 423 P.2d 221].)

We now reach the second contention: that the court, although it did instruct the jury properly on the topic of voluntariness of confessions generally, did not define the *Escobedo-Dorado* type warning and waiver; that although such an instruction was not requested, it was an instruction the court was obligated to give voluntarily and without request; and that the failure so to instruct was prejudicial error.

On this question this is a case of third impression (unless in the flood of cases released following *Miranda*, Shepard's California Citations and we have missed another or others). In *People* v. *Sanchez* (February 16, 1967) 65 Cal.2d 814 [56 Cal.Rptr. 648, 423 P.2d 800], defendant was a life-termer convicted of a fatal assault with a deadly weapon (a knife) upon a prison official. He made several confessions after having been warned of his right to remain silent and his right to an attorney. He challenged both the voluntariness of his confession (urging the coercive effect of a previous beating) and the adequacy of the warning. The trial judge took evidence outside the jury's presence and admitted the confession which was repeated before the jury *and again challenged by defendant on both of the grounds stated above.* The jury was properly instructed that it must disregard the confession if it found it had been given involuntarily. No special instruction regard-

ing the factors which must be present to constitute a proper warning under the *Escobedo-Dorado* rule was given. Answering the contention on appeal that omission of the latter was prejudicial error, the court held it was not error at all. It stated (on p. 827 of 65 Cal.2d) that California, although under no federal constitutional compulsion to do so (*Jackson* v. *Denno*, 378 U.S. 368 [12 L.Ed.2d 908, 84 S.Ct. 1774, 1 A.L.R.3d 1205]), required by case law and as a matter of state policy ''an independent determination of the voluntariness of an admission by both the trial judge and jury.'' It refused, however, to equate the necessity of instruction on the issue of voluntariness with a requirement that the court instruct on the sufficiency of the *Escobedo-Dorado* warnings given and decided: ''Accordingly, no good purpose would have been served in the instant case by instructing the jury in the manner defendant claims was required.''

In *People* v. *Eli*, decided 18 days later (March 6, 1967) 66 Cal.2d 63 [56 Cal.Rptr. 916, 424 P.2d 356], the Supreme Court dealt with another death penalty case. There the body of a nude woman, strangled and stabbed, was found in her home. The fingerprints of defendant found in the home, and the fact that he was a vacuum cleaner equipment salesman with an appointment to visit the victim's home on the date of the killing, made him a suspect. Defendant voluntarily went to the police station with his parents. He was taken to an interrogation room and questioned. According to the officers' testimony, he was first fully advised of his rights to remain silent and to an attorney; also told that anything he said could be used in court. He affirmed that he understood and made what he deemed to be an exculpatory statement denying any physical contacts with the victim. Later he modified his story, admitting sexual intercourse with the woman occasioned by her provocative advances, but denied having molested her. Still later he voluntarily submitted to a lie detector test. After that, during an interrogation with a reporter present, he admitted having killed the victim but stated it was in self-defense. (Evidently he regarded the strangling of the woman after the stabbing as a fitting act of retribution for her having, as he claimed, seduced him.)

At the trial evidence substantially as outlined above was taken outside the presence of the jury, and the judge determined the defendant's statements were voluntary and that there had been a waiver of a right to counsel after a warning complying with the *Escobedo-Dorado* requirements. Although

defendant and his parents had challenged the testimony on both grounds at the *voir dire* examination, their contentions were not reasserted before the jury. The court stated one of the questions as follows (on p. 75 of 66 Cal.2d) : *"Did the trial court err in not submitting to the jury the question whether defendant's statements were made after a proper warning and a waiver of his right to counsel?"* The court answered this question in the negative. It reasoned that under *People* v. *Schader,* 62 Cal.2d 716, 727 [44 Cal.Rptr. 193, 401 P.2d 665], a trial court must first determine that the confession was voluntary *"and that the defendant's right to counsel and to remain silent were not violated."* (Italics supplied.) That had been done. It stated that even after that "the defendant might, if he wished, present evidence *on such issues* for the consideration of the jury, and the jury then had to be permitted to make the final determination. (See *People* v. *Gonzales,* 24 Cal.2d 870, 877 [151 P.2d 251].)" (Italics supplied.) The court then stated on p. 76 of 66 Cal.2d) : "Under such circumstances, a defendant was entitled to have the jury pass *upon the issues* even if he had failed to request an instruction to that effect, it being the duty of the trial court to give such an instruction on its own motion. (*People* v. *Bevins,* 54 Cal.2d 71, 77 [4b] [4 Cal.Rptr. 504, 351 P.2d 776].)" (Italics supplied.) The court then stated that the prosecution and defense had both presented evidence *on the issue of voluntariness* outside the presence of the jury and when the judge had made his preliminary determination, before the jury. "Accordingly, defendant was entitled to have the jury determine the issue, and the trial court properly so instructed." (P. 76.) Testimony regarding the sufficiency of the warning of the right to remain silent and of the right to counsel, although presented to the judge *was not presented to the jury*. Therefore, the court concluded (at p. 77) : "Since there was no evidence before the jury to support a finding that defendant was not properly advised of his constitutional rights, the issue was not one for the jury's determination, and defendant must be deemed to have waived any right to question the reliable determination made by the trial judge." To us the clear import of the court's statement as a whole is that whenever the defendant makes the fact or sufficiency of the warning an issue *before the jury,* it is a question upon which a defendant, even absent a request for an instruction, is entitled to have the trial court give one upon its own motion.

Yet, so construed, the *Eli* case is in conflict with *People* v. *Sanchez, supra,* 65 Cal.2d 814.

The *Eli* case makes no mention of *People* v. *Sanchez.* Both were unanimous opinions. We cannot assume the court intended to overrule the earlier case by the decision made three weeks later. The holding in *Eli* is that when a defendant *does not* make the giving or sufficiency of the warning a jury issue, the court is *not* required to give a special instruction on the steps involved which constitute an adequate warning. Although one would assume from the *Eli* decision the requirement of such an instruction when the converse occurs—i.e., when the defendant *does* make the sufficiency of the warning a jury issue, *Sanchez* squarely holds to the contrary. The statement in *Eli* is *dictum.* █ As shown in *Sanchez,* it was the *holding* of the court, *under the circumstances there involved*—where the defendant *had* expressly made the sufficiency of the warning a jury issue and the court had not given a special instruction—that it was not required to.

We cannot distinguish the facts of the case at bench from those in *Sanchez.* Defendant complained of the involuntariness of his confession generally and *also* that the warnings required by *Escobedo-Dorado* had not been given. The complaints were made both when the court heard evidence with the jury excused and afterwards before the jury. █ Under *Jackson* v. *Denno, supra,* 378 U.S. 368, after a showing has been made to, and accepted by, the judge, no further federal constitutional compulsion requires that the voluntariness of a confession be retried by a jury.

█ We follow *People* v. *Sanchez, supra,* 65 Cal.2d 814, 827, which holds: "It does not necessarily follow that a similar rule [to the rule requiring that the jury be instructed regarding voluntariness] should obtain as to the rights to counsel and to remain silent before allowing jury consideration of an extrajudicial statement. The matters which must necessarily be placed before the jury in such an instance are not of the same nature as those which are presented to a jury on the question of voluntariness. (See *People* v. *Gorg* (1955) 45 Cal.2d 776 [291 P.2d 469].) Moreover, the determination which must be made is a more complex one than in the case of a question of voluntariness. Finally, in the particular circumstances of the instant case, the jury, in determining the question of voluntariness, necessarily foreclosed any question of a lack of waiver, as such a lack could only be found where defendant had involuntarily confessed."

. As the court in *Sanchez* stated in a footnote on page 827: "We express no opinion as to the procedure to be followed under the new Evidence Code effective January 1, 1967. (See Evid. Code, § 405; Witkin, Cal. Evidence (2d ed. 1966) §§ 492, 1092.)"

The judgment is affirmed.

Friedman, J., and Regan, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied September 13, 1967. Peters, J., was of the opinion that the petition should be granted.